**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ROBERT MORTENSEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 09-0787-WS-N** |
| | ) | |
| **MORTGAGE ELECTRONIC** | ) | |
| **REGISTRATION SYSTEMS, INC.,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| **BAC HOME LOANS SERVICING, LP,** | ) | |
| | ) | |
| **Counterclaim Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ROBERT MORTENSEN,** | ) | |
| | ) | |
| **Counterclaim Defendant.** | ) | |

**ORDER**

This matter comes before the Court on defendants' and counterclaim plaintiff's Motion for Summary Judgment (doc. 64). The Motion has been briefed and is ripe for disposition.[1]

**I.     Procedural History.**

Plaintiff, Robert Mortensen, initiated this action by filing a Complaint against defendants, Mortgage Electronic Registration Systems, Inc.; Countrywide Home Loans, Inc.; Countrywide Home Loans Servicing, LP; BAC Home Loans Servicing, LP; and Bank of America, N.A.[2] The

---

[1]     Via separate Order entered on this date, the undersigned has denied plaintiff's cross-motion for summary judgment. These two rulings are properly viewed as companion Orders, and should be read together.

[2]     The Complaint was brought in the Circuit Court of Baldwin County, Alabama, on November 2, 2009, but defendants subsequently removed it to this District Court. Federal subject matter jurisdiction was properly predicated on 28 U.S.C. § 1331, given Mortensen's claims for damages under federal statutes, including the Truth in Lending Act, 15 U.S.C. (Continued)

Complaint alleges that defendants treated Mortensen shabbily in connection with his efforts to negotiate a mortgage loan modification for certain residential property that he owns in Foley, Alabama.[3] In particular, plaintiff maintains that defendants instigated foreclosure proceedings after promising him that they would not do so, and even though defendants purportedly lack standing to foreclose. Relying on discrete factual allegations regarding his mortgage loan, the attempted modification of same, and defendants' threatened foreclosure activities, Mortensen's Complaint reels off a welter of causes of action, including federal statutory claims under the Truth in Lending Act, Real Estate Settlement Procedures Act, and Home Ownership and Equity Protection Act; and state-law claims for breach of implied covenant of good faith and fair dealing, intentional inflection of emotional distress, violation of Alabama Code § 35-10-9, slander of title, and violation of notice of sale requirements under Alabama Code § 35-10-13. The Complaint also recites an undifferentiated laundry list of legal theories under the heading "Affirmative Defenses to the Foreclosure Action."[4] Such "Affirmative Defenses" include "original note not provided," unconscionability, BAC Servicing not a proper party to foreclose, breach of implied covenant of good faith and fair dealing, breach of contract, unjust enrichment, fraud in the inducement, concealment in negotiations, unclean hands, assumption of risk, and consent.[5] Mortensen is and has been represented by counsel throughout this proceeding.

---

§§ 1601 *et seq.*; Regulation Z, 12 C.F.R. §§ 226 *et seq.*; the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.*; Regulation X, 24 C.F.R. §§ 3500 *et seq.*; and the Home Ownership and Equity Protection Act, 15 U.S.C. § 1639. Jurisdiction also appears proper under the diversity provisions of 28 U.S.C. § 1332.

[3]     Mortensen acknowledges the paramount importance of the modification negotiations to this litigation; indeed, he testified that he is suing Countrywide "for not giving [him] help when [he] asked for it." (Mortensen Dep. (doc. 66, Exh. 4), at 238-39.)

[4]     Such a designation is perplexing because at the time the Complaint was filed defendants had not initiated a judicial foreclosure action. As this litigation has proceeded, Mortensen has treated certain of these claims as seeking affirmative relief from defendants, despite the fact that the Complaint does not so couch them. As such, the true classification and status of these legal theories pleaded in the Complaint as "Affirmative Defenses" is murky.

[5]     Altogether, then, the Complaint purports to interpose as many as 18 (or 19, if the twice-pleaded breach of good faith and fair dealing claim is double-counted) claims against five named defendants, all arising from a straightforward, ordinary mortgage transaction. In neither (Continued)

Defendant BAC Home Loans Servicing, LP ("BAC Servicing"), responded by asserting counterclaims against Mortensen for declaratory judgment, equitable relief, breach of contract, and money had and received. (*See* doc. 4.) In particular, BAC Servicing maintains that Mortensen executed a note in the principal amount of $110,051, executed a mortgage on the property to secure repayment of the note, and then defaulted on the terms of the note, thereby entitling BAC Servicing to foreclose the mortgage and to a money judgment for the owed funds.

## II. Pertinent Record Facts.[6]

The underlying facts are straightforward, and largely undisputed.[7] Plaintiff is a licensed real estate broker with more than three decades of experience. He is presently employed in a real

_____

his pleadings nor his Rule 56 briefs has Mortensen endeavored to flesh out or explain the vast majority of these claims, or even to link them to particular defendants, facts or legal elements; rather, the bulk of these claims appear to have been pleaded to obfuscate, proliferate, misdirect and otherwise bog down these proceedings in a mass of ill-fitting, make-work legal theories that have consumed considerable resources of defendants and this Court, while plaintiff fails to exert even minimal effort to advance or defend many of them. This kind of wasteful "shotgun pleading" practice is improper under the Federal Rules of Civil Procedure. *See, e.g., Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 650 n.22 (11th Cir. 2010) ("This circuit condemns shotgun pleadings."); *Ledford v. Peeples*, 605 F.3d 871, 892 (11th Cir. 2010) ("shotgun pleading" is one that "lumps multiple claims together in one count and, moreover, appears to support a specific, discrete claim with allegations that are immaterial to that claim"); *see generally Beckwith v. City of Daytona Beach Shores, Fla.*, 58 F.3d 1554, 1567 (11th Cir. 1995) ("The bar would be better served by heeding this advice: In law it is a good policy never to plead what you need not, lest you oblige yourself to prove what you cannot.") (citation and internal quotation marks omitted).

[6] The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007). Thus, plaintiff's evidence (insofar as he has submitted any) is taken as true and all justifiable inferences are drawn in his favor. Also, the Court notes that, via separate Order entered on this date, plaintiff's supplemental affidavit submitted in support of his own motion for summary judgment has been stricken. Because of that ruling, that affidavit has not been considered for purposes of this Order, either. Even if it had been, however, the result of this analysis would be unchanged.

[7] Plaintiff's cursory five-page summary judgment brief includes a section labeled "Plaintiff's Response to Defendant's Narrative Statement of Undisputed Facts." That section consists of a single sentence in which Mortensen objects, without citing record evidence of any kind, that defendants failed to prove "that Countrywide Home Loans Servicing L.P. is BAC Servicing and the means by which the mortgages held by Countrywide were assigned to the new (Continued)

estate business that he owns with his wife, who is also a seasoned realtor. (Mortensen Dep. (doc. 66, Exh. 4), at 6, 26, 40; Mrs. Mortensen Dep. (doc. 66, Exh. 5), at 7-9, 16.) For the last nine years, Mortensen's primary residence has been in Miramar, Florida. (Mortensen Dep., at 63-64.) Mortensen and his wife invest in real estate, and presently own six rental investment properties. (*Id.* at 61, 64-65.) This lawsuit concerns one such parcel, a residential property (the "Property") located at 16021 Mansion Street in Foley, Alabama.[8] The Mortensens have never used the Property as their primary residence, and have always used and intended to use it to generate rental income. (Mrs. Mortensen Dep., at 32-33.) Plaintiff freely characterizes this Property as "Investment Property." (Doc. 66, Exh. 9, at #4.)

### A. The Mortgage Loan.

Mortensen purchased the Property from non-party Adams Homes, LLC for $146,735.00 at a closing held on or about December 29, 2006. (Mortensen Dep. at 106, 108; Defendants' Exh. 9(e).) Mortensen paid more than $37,000 in cash. (Defendants' Exh. 9(e).) To finance the remainder of the purchase price, he borrowed money from defendant Countrywide Home Loans, Inc. ("Countrywide") via promissory note, for which he executed a corresponding mortgage. (Mortensen Dep., at 159-61, 163.)

Because much has been made over the identities of the holders of the note and mortgage, the chronology of those instruments is germane to the issues presented on summary judgment. As mentioned, the loan for the Property originated with Countrywide in December 2006. (Gershon Decl. (doc. 66, Exh. 7), ¶ 2.) At that time, Mortensen executed and delivered to Countrywide a promissory note in the principal amount of $110,051.00. (*Id.*, ¶ 3(a).)

---

company, BAC." (Doc. 71, at 3.) In this "Response" section, plaintiff fails to address, dispute or controvert any other fact recited in the nine pages of undisputed facts proffered by defendants. (*See* doc. 65, at 2-10.) He does not cite to a single exhibit. Where, as here, a nonmovant fails properly to address another party's assertions of fact, the District Court may "consider the fact undisputed for purposes of the motion." Rule 56(e)(2), Fed.R.Civ.P. This Court does so, with respect to all properly supported facts presented by defendants as to which plaintiff has shirked his burden under Rule 56(c).

[8] The record reflects that the Mortensens are embroiled in litigation in multiple states against lenders as to loan modification and other issues concerning several of their other rental properties. (Mrs. Mortensen Dep., at 18, 24-25, 28, 31, 41; Mortensen Dep., at 182.)

Contemporaneously, Mortensen granted a mortgage interest in the property to defendant Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Countrywide. (*Id.*, ¶ 3(b).) The Mortgage expressly stated that "MERS is the mortgagee under this Security Instrument" and that MERS was "acting solely as nominee for [Countrywide] and [Countrywide]'s successors and assigns." (*Id.*, Exh. B, at 1.)

Both Countrywide and MERS later transferred their respective interests. As to the note, Countrywide transferred its interest to non-party Federal Home Loan Mortgage Corporation ("Freddie Mac") in January 2007. (*Id.*, ¶ 3(c) & Exh. C.) Defendant Countrywide Home Loans Servicing, LP ("Countrywide Servicing") serviced the loan on behalf of the lender both before and after the loan was transferred to Freddie Mac. (*Id.*, ¶ 3(d)-(e).) In early 2009, Countrywide Servicing underwent a name change, pursuant to which it became known as defendant BAC Servicing. (*Id.*)[9] The net result of all of the above is that BAC Servicing is the present holder of the note, and possesses the original note at this time. (*Id.*, ¶ 3(f).) As to the mortgage, MERS

---

[9] In response to defendants' record evidence of this name change, plaintiff's brief offers a blanket denial, saying that "Defendant have [*sic*] not produced documentation showing that Countrywide Home Loans Servicing L.P. is BAC Servicing." (Doc. 71, at 3.) Apparently, plaintiff's position is that defendants should be required to prove that BAC Servicing is Countrywide Servicing's successor using different evidence than a witness's declaration made from personal knowledge. That's not how summary judgment works under the Federal Rules of Civil Procedure. A nonmovant does not get to dictate the particular form of admissible record evidence the movant may utilize to establish undisputed facts. Gershon's Declaration is competent record evidence that Countrywide Servicing became BAC Servicing. If plaintiff wishes to show a disputed fact question concerning the lineage of BAC Servicing vis a vis Countrywide Servicing, he must present evidence to the contrary or show that movant's proffered evidence is insufficient in some way to demonstrate the point for which it is cited. *See* Rule 56(c)(1), Fed.R.Civ.P. Plaintiff has done neither. Instead, counsel seeks to superimpose his own preferences to pick and choose the type of evidence that defendants must use to make their case. Plaintiff's counsel insists that defendants "do have to" do this because he "wants written verification" of the admissible summary judgment evidence they have already submitted. (Doc. 71, at 5.) Such demands are irreconcilable with fundamental summary judgment principles.

In any event, defendants' reply brief neutralizes plaintiff's entire line of argument by appending a copy of the actual Certificate of Amendment to the Certificate of Limited Partnership, on file with the Texas Secretary of State's Office, showing that on April 21, 2009, Countrywide Servicing's certificate of limited partnership was amended to read that "The name of the limited partnership is BAC Home Loans Servicing, LP." (Doc. 74, Exh. 10.) This evidence lays to rest once and for all plaintiff's frivolous contention (devoid of any evidentiary support) that Countrywide Servicing and BAC Servicing are not, in fact, one and the same entity.

transferred and assigned all of its right, title and interest in the mortgage to Countrywide Servicing on March 12, 2009.  (Hultman Decl. (doc. 66, Exh. 8), ¶ 4 & Exh. B.)[10]  The "Assignment of Mortgage" document provided that MERS was transferring and assigning its interest in the Mortensen mortgage to Countrywide Servicing and "its successors, transferees and assigns forever."  (*Id.*, Exh. B.)  Of course, as already stated, Countrywide Servicing later changed its name to BAC Servicing (*i.e.*, BAC Servicing <u>is</u> Countrywide Servicing, or at least its successor).  Thus, BAC Servicing (and none of the other defendants) presently holds the mortgage, in addition to the note.

At the time he entered into this loan transaction, Mortensen understood that Countrywide was the lender, and he knowingly and willingly gave a mortgage interest in the Property in exchange for the loan.  (Mortensen Dep., at 159-61, 163.)  Mortensen concedes "that there is a valid and legally binding mortgage" on the Property.  (*Id.* at 161.)  Mortensen likewise acknowledges that the note has not been paid in full, but that there is an outstanding balance today because he only made payments on it between January 2007 and September 2008.  (*Id.* at 163-65.)

>    **B.**    ***Loan Modification and Forbearance Negotiations.***

The Property has been rented at various times and vacant at others, and has generated net rental income for Mortensen, even this year.  (Mortensen Dep., at 131, 133; Defendants' Exh. 9(f).)[11]  Overall, however, when Mortensen looked at the Property "as a businessman" in the wake of what he called "the collapse of the financial system," he determined that the Property was not affordable, in that rent payments would not cover his expenses.  (*Id.* at 206-09.)  At the same time, the Mortensens were in personal financial distress with the decline of the real estate

---

[10]    Plaintiff does not dispute that the mortgage on the Property was assigned to Countrywide Home Loan Servicing, LP in March 2009.  (Mortensen Dep., at 173-74.)

[11]    The Property had been a positive revenue source in 2008 and 2009.  For example, in 2009, Mortensen did not pay a single dollar on the note for the Property, even though he received net rental income for the Property in the amount of $5,795.  (Vargas Dep. (doc. 66, Exh. 6), at 73-74; Defendants' Exh. 9(f).)

market in the 2006 to 2008 period, and found themselves exploring alternatives for how to meet carry costs on their portfolio of investment properties. (Defendants' Exh. 9(a).)[12]

In approximately September 2008, Mortensen contacted Countrywide and indicated that he was "looking for forbearance" on the loan for the Property. (Mortensen Dep., at 184.)[13] According to plaintiff, his reason for making the request was that "the money was running out" and that he felt that the available assets to pay that note were "going to run out by the end of 2008." (*Id.* at 242-43.) Mortensen was "in a cash-flow crunch," and knew he was going to be incapable of making payments on that loan within a few months. (*Id.* at 247-48.) To put it bluntly, when Mortensen first spoke with Countrywide, he "knew that [he] would have to default" because he did not have the money to stay current on his payments. (*Id.* at 248.)[14] In response to Mortensen's specific forbearance request, the Countrywide representative informed

---

[12]    Mortensen ultimately retained counsel in approximately January or February 2009 for the specific purpose of obtaining a modification of his mortgage loan for the Property. (Mortensen Dep., at 87-89.)

[13]    Mortensen testified that by "forbearance," he meant a "temporary cessation in payments," after which the lender would simply forgive the payments that he skipped during that period. (*Id.* at 185-87.) Essentially, then, plaintiff's desire was that Countrywide give him credit for payments that he was not going to make, thereby subsidizing his investment from the lender's own pockets (or somehow using government funds for that purpose). However, he never expressed this point to Countrywide in the initial conversation. (*Id.*)

[14]    Supporting evidence bears out this proposition. As of late 2008 and 2009, Mortensen and his wife were mired in $200,000+ credit card debt, had already borrowed the limits on their life insurance policies, and had tapped out their 401(k) funds. (*Id.* at 259-61.) Mrs. Mortensen explained that they were "wiping out everything [they] had" in terms of reserve assets in order to meet their obligations. (Mrs. Mortensen Dep., at 42.) Even after doing so, they still could not keep up, such that the Mortensens could not possibly continue to meet their mortgage obligations without help from their lenders. (*Id.* at 49-50.) It was "inevitable" that the Mortensens were going to have to default on their mortgage for the Property. (*Id.* at 57.) Mortensen's bookkeeper likewise testified that as of September 2008, Mortensen sought assistance from lenders because "we were not going to be able to make our payments" and he was going to default on his mortgage obligations in any event, regardless of what those lenders advised him. (Vargas Dep., at 121-22.) Mortensen testified that he expected unspecified federal government programs to pay for his loan modifications because he had received legal advice to that effect. (Mortensen Dep., at 263-64.) In other words, he expected Countrywide to lower his total principal obligation on the Property by $10-$15,000, and the government to pay the difference. (*Id.* at 278-79.)

him that "you have to be in default to be helped under any modification program that you're seeking." (*Id.*)[15] Mortensen proceeded to withhold payment on the mortgage loan in October and November 2008, only to be informed by Countrywide in November that "we don't offer forbearance." (*Id.* at 188.) Mortensen has never made another accepted payment on this loan obligation, through the present day. (Defendants' Exh. 9(g), at 6.)

Because Mortensen stopped making payments on the note, Countrywide sent him a Notice of Intent to Accelerate on November 17, 2008, explaining that the loan was in default and that foreclosure proceedings may be initiated if he failed to cure the default by paying $1,507.61 (two months' payments plus $32.99 in late charges) within 30 days. (Gershon Decl., ¶ 3(h) & Exh. E.) The total principal balance owed at that time was $107,752.65. (*Id.*, ¶ 3(i) & Exh. F; Mortensen Dep., at 175.) The November 2008 notice invited Mortensen to contact Countrywide to discuss alternatives to foreclosure, including loan modification, although it cautioned him that reduction in monthly payments was just "possible" and that modifications are "limited to certain loan types." (Gershon Decl., Exh. E.)

Mortensen continued to seek mortgage relief after receipt of the Notice of Intent to Accelerate. In that regard, plaintiff acknowledges that BAC Servicing / Countrywide offered him modifications on two occasions in 2009, both of which he declined. (Mortensen Dep., at 202.) The first proposed modification was communicated to Mortensen via letter from BAC Servicing dated June 17, 2009. (Defendants' Exh. 9(i).) By plaintiff's own reckoning, that offer would have allowed him to resume payments, get current on the loan in short order, and <u>reduce</u> his monthly payment by $18 per month, even though he had skipped approximately eight payments, all without a large lump-sum payment at the outset for past due sums. (Mortensen Dep., at 202-04, 287-88, 291.) That modification would have increased the principal amount on the loan by $8,755 to cover additional interest, escrow payments, and fees. (*Id.* at 286.) Mortensen rejected the June 2009 modification offer out of hand even though he now admits that

---

[15]     This response was not unusual. Plaintiff's evidence is that all of the Mortensens' lenders (not just Countrywide) told them that they could not help the Mortensens with forbearance or modification on their loans as long as they were current on their payments. (Mrs. Mortensen Dep., at 116-17, 189-91.)

"[l]ooking back on it I like it" and that he wishes he had taken it. (*Id.* at 294.)[16] In his words, Mortensen "made a mistake" by turning it down. (*Id.* at 306.)

BAC Servicing communicated a second proposed modification to Mortensen via letter dated October 19, 2009. (Defendants' Exh. 9(h).) This proposal would have increased his monthly payments by approximately $100. (Mortensen Dep., at 205, 299.) Of course, a higher payment amount would be expected, given the accrual of additional interest and fees in the interim. Because of Mortensen's ongoing failure to resume payments on his defaulted loan, he was digging the hole deeper and deeper. (*Id.* at 299.) Again, however, BAC Servicing required that Mortensen make only a single monthly payment to get the note back on track under the modification. (*Id.*) Mortensen was unhappy with this proposal because it raised his monthly payments rather than lowering them, but BAC Servicing informed him that it was the best they could do. (*Id.* at 300-01.) Plaintiff rejected the October 2009 loan modification offer, as well.

Just days after he rejected the second modification offer, Mortensen received a letter dated November 2, 2009 from BAC Servicing concerning the Property. (Mortensen Dep., at 314.)[17] This letter was obviously incorrect on its face. The November 2009 letter recited what it called a "breakdown of the payments and fees that are due on the above-mentioned loan," but listed only two missed payments for August and September 2006. (Defendants' Exh. 9(c).) Of course, Countrywide had not issued the loan until December 2006, and Mortensen well knew that he had missed far more than two payments because he had not paid a dime since September 2008. (Mortensen Dep., at 321, 324.) Despite being cognizant of this error, Mortensen

---

[16]     According to Mortensen, the sole reason why he rejected the June 2009 proposal was that BAC Servicing would have required him to execute any documentation that the lender deemed necessary if any document related to the mortgage, note or modifications were lost, misplaced, or inaccurate. (Mortensen Dep., at 293-94.) He found that provision unpalatable, even though he agrees the original loan and mortgage documents he signed contained a similar provision. (*Id.* at 294.) There is no evidence that Mortensen brought this concern to BAC Servicing's attention, much less that the lender refused to accommodate it.

[17]     By the time Mortensen received the November 2 correspondence, he had already filed his Complaint in this litigation. (*Id.* at 335.) As a result, the Complaint cannot possibly be predicated on that correspondence, or events ensuing thereafter. At no time did Mortensen properly amend his pleadings to assert any causes of action relating to the November 2 letter; therefore, his case against defendants does not and cannot include claims arising from that letter, or subsequent events concerning same.

endeavored to manipulate it to his advantage by unilaterally deeming the letter a modification offer under which a small payment would bring the entire loan current.  (*Id.*. at 316-17.)  He "just assumed" such a meaning in the absence of any confirmatory language, without having any conversations with BAC Servicing.  (*Id.* at 318, 322.)  On that basis, Mortensen hastily fired off a payment of $3,285.74 to BAC Servicing on November 18, 2009.  (*Id.* at 314-17; Defendants' Exh. 9(c).)[18]  He did so even though he knew that the November 2 letter said nothing about escrow, loan balances, term of the new loan, or the like.  (*Id.* at 319-21.)  He knew the letter did not use the terms "modification" or "forbearance."  (*Id.* at 318.)  Yet he just "assumed" that this was a brand-new modification offer under which the overwhelming majority of his missed payments, accrued interest and fees would simply evaporate.  Mortensen did not execute any documents or sign any agreements in connection with the November 2009 letter, even though all previous modification offers from the lender had been accompanied by written agreements that he would be required to sign and return to manifest his acceptance.  (*Id.* at 333.)  BAC Servicing did not accept Mortensen's payment pursuant to the facially erroneous November 2 letter.  (Vargas Dep., at 129.)

At various times during Mortensen's two-plus year history of nonpayment on the mortgage (even though the Property produced substantial rental income for him during that time period), particularly during 2009, defendants notified him of the potential commencement of foreclosure proceedings.  (Defendants' Exhs. 9(j), 9(k), 9(m), 9(n).)  However, there has never been a foreclosure sale on the Property.  (Mortensen Dep., at 282.)  There is zero evidence that any such foreclosure sale is presently scheduled or imminent at this time.[19]

---

[18]     Two weeks later he mailed BAC another check, this one for $724, the "normal" pre-default monthly payment on the note.  (Doc. 66, Exh. 9, at #31.)  Giving Mortensen the benefit of the doubt, he was "assuming" that the original terms of the loan had gone back into effect, as if his default (and the associated unpaid principal amounts, plus accrued interest, late fees and penalties during the previous 13 months) had never happened.  Defendants never told him anything that might reasonably support such an outlandish assumption, which could only have been the product of wishful thinking.

[19]     Mortensen never told defendants that he had enough money and was willing to pay the full amount necessary to reinstate the loan on this Property back to current status.  (Mortensen Dep., at 307-08.)  Given plaintiff's admission in this regard, his insistence in his summary judgment brief that he is "ready, willing and able to resume making payments" (doc. 71, at 4) is self-serving and ultimately irrelevant, especially if it is not accompanied by (Continued)

**III.    Analysis.**

   *A.    Summary Judgment Standard.*

   Summary judgment should be granted only if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed.R.Civ.P.  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact.  *Id.*  "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment."  *Id.*  (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted).  "Summary judgment is justified only for those cases devoid of any need for factual determinations."  *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

   *B.    Mortensen's Contract-Based Claims.*

   In several places in the Complaint, Mortensen asserts that defendants breached their contractual obligations to him.  Specifically, he pleads that defendants breached a contractual duty of good faith and fair dealing "by failing to reasonably modify Plaintiffs [*sic*] mortgage loan."  (Complaint, ¶ 32.)  Plaintiff further alleges that defendants breached a contract because "[o]nce plaintiff defaulted, the mortgage lender did not negotiate in good faith, and is requiring

_____

willingness to make the lender whole for his two-plus years of missed payments.  Had Mortensen communicated to defendants that he is ready, willing and able to resume payments before filing suit, or before forcing defendants through an expensive, time-consuming cross-summary judgment motion process, he might have gotten his wish.  But it is now awfully late in the day for that sentiment, which lacks legal significance in this case, anyway.

plaintiff to sign a mortgage loan modification that will force plaintiff to incur thousands of dollars of penalties and interest." (*Id.*, ¶ 35.) The Complaint also includes nebulous allegations that any attempt by defendants to foreclose on the Property would run afoul of unspecified actual or implied contractual obligations. (*Id.*, ¶¶ 52-53.)[20]

On summary judgment, defendants advance a phalanx of legal arguments as to Mortensen's contract-based claims. First, with respect to plaintiff's position that defendants breached a contract by "failing to reasonably modify" his loan, defendants argue that they were under no contractual duty to modify Mortensen's loan at all, much less to proffer a modification that gave him everything he wanted. (Doc. 65, at 11-12.) The record supports only defendants'

_____

[20]        In his opposition brief, Mortensen improperly attempts to expand the scope of his breach of contract claim by asserting a claim about the November 2, 2009 letter, to-wit: "Defendants accepted payments and have gone on to breach the agreement that plaintiff is willing to have enforced." (Doc. 71, at 3.) Mortensen goes on to insist that "Defendants claim the letter was not a modification offer, yet Plaintiff believes it was a modification offer," and that this question must be sorted out by a jury. (*Id.* at 4.) Plaintiff is wrong. No claims in the Complaint arise from the November 2 letter, nor could they, because the Complaint was filed <u>before</u> plaintiff ever saw that letter. And plaintiff never properly amended his Complaint to interpose contract claims based on the November 2 letter. Simply put, the November 2 letter is not part of plaintiff's claims in this action. To the extent he endeavors to use his summary judgment briefing as a platform to amend the pleadings, such an attempt is improper and impermissible. *See, e.g., Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."); *Temploy, Inc. v. National Council on Compensation Ins.*, 650 F. Supp.2d 1145, 1154 (S.D. Ala. 2009) ("New claims can not be raised in response to summary judgment."). Besides, notwithstanding plaintiff's attempts to take advantage of a writing he knew to be erroneous, the November 2 letter cannot reasonably be viewed as an offer by defendants to forgive Mortensen's 13 missed monthly payments, as well as all associated interest, penalties and fees associated with same, if he would just make a single small payment covering two months that predated the loan's origination. Nothing in the circumstances of that vague, indefinite, facially incorrect letter (which, by plaintiff's own admission, omitted numerous key terms for any modification) suggests that defendants intended to be bound to a particular modification, or to any modification. Mortensen's opportunistic "assumptions" that defendants were giving him exactly what he wanted at minimal cost to him cannot and do not create genuine issues of material fact as to whether the incomplete, obviously inaccurate November 2 letter constituted a new agreement into which the parties entered. *See generally Macon County Greyhound Park, Inc. v. Knowles*, 39 So.3d 100, 108 (Ala. 2009) (stating well-worn rules of contract formation that "any contract must express all terms essential to the transaction with definiteness sufficient to enable a court to enforce the parties' agreement" and that a manifestation of intention cannot be accepted to form a contract "unless the terms of the contract are reasonably certain") (citations omitted).

view.  Neither the mortgage nor the promissory note contains any provisions obligating the lender to modify the loan upon demand.  Plaintiff's deposition testimony does not reveal a single promise by Countrywide, BAC Servicing, or anyone else to modify the loan to his subjective satisfaction.  There simply was no such contract.  In response, plaintiff states that "[a]n agreement was entered into between Plaintiff and BAC Mortgage Servicing," that "there are numerous written agreements," and that "[t]he parties agreed to modify a mortgage."  (Doc. 71, at 3.)  Frankly, the Court is at a loss to understand what plaintiff is talking about.  Mortensen does not specify what these "agreements" were (whether written or otherwise), much less proffer any record evidence to support their existence.  What is plaintiff's evidence that the parties agreed to modify the mortgage?  The Court is aware of none.  To be sure, there were negotiations about possible modification terms; however, Mortensen identifies no evidence (and the Court has found none) that defendants ever promised to modify the loan's terms in conformity to whatever Mortensen's wishes might be.  Plaintiff cannot withstand summary judgment scrutiny using smoke and mirrors in the form of hollow, self-serving generalities.  *See, e.g., Abrams v. Ciba Specialty Chemicals Corp.*, 663 F. Supp.2d 1220, 1229 (S.D. Ala. 2009) ("It is not enough on summary judgment for a non-movant simply to bandy about nebulous what-ifs and abstract theories untethered to record evidence.").

Next, defendants assert that Mortensen's contract-based claims pertaining to the loan modification fail under Alabama's Statute of Frauds.  Under Alabama law, "[e]very agreement or commitment to lend money, delay or forbear repayment thereof or to modify the provisions of such an agreement or commitment" is void "unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party."  Ala. Code 8-9-2(7).  To satisfy the Statute of Frauds, a writing memorializing such a modification or forbearance must "state the full terms of the agreement to forbear, the mutuality of the agreement, and the intention of the parties."  *DeVenney v. Hill*, 918 So.2d 106, 115 (Ala. 2005).  No such written agreement exists that would alter the terms of Mortensen's mortgage or promissory note obligations; therefore, defendants are correct that plaintiff's contract claims

concerning an alleged agreement to modify the mortgage loan fail as a matter of law for non-conformity with the Statute of Frauds.[21]

Finally, defendants contend they are entitled to summary judgment on plaintiff's contract claims concerning the "direct or implied covenant of good faith and fair dealing." (Complaint, ¶ 52.) The mortgage and note do not state that defendants were required to conform themselves to standards of good faith and fair dealing in negotiating any loan modification; therefore, there is no evidence that defendants bound themselves to any "direct" promise of good faith or fair dealing. As for an "implied" covenant, it is true that "in every contract there exists an implied covenant of good faith and fair dealing." *Shoney's LLC v. MAC East, LLC*, 27 So.3d 1216, 1220 n.5 (Ala. 2009) (citations omitted). This covenant ensures that "neither party shall do anything which will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract." *Lloyd Noland Foundation, Inc. v. City of Fairfield Healthcare Authority*, 837 So.2d 253, 267 (Ala. 2002) (citation omitted) (explaining that parties to contract must fulfill duties and obligations that according to reason and justice they should do to carry out contract's purpose). As the Court reads the Complaint, however, Mortensen would distort this implied duty beyond recognition by theorizing that defendants were duty-bound to forfeit their own contractual rights by providing plaintiff's desired loan modification forgiving thousands of dollars in principal payments that Mortensen had skipped, as well as accrued interest and penalties. The Court is aware of no authority, and plaintiff has certainly provided none, that might stretch the concept of an implied covenant of good faith and fair dealing to hold that a lender must relinquish its bargained-for rights to payment in full on a loan. Besides, it defies logic and common sense for Mortensen to accuse defendants of negotiating in bad faith when he

---

[21] Plaintiff's sole retort to the Statute of Frauds argument is a single sentence reading as follows: "The Statute of Frauds really doesn't apply to this case because there are numerous written agreements and the actions of the parties are what is at issue, as opposed to whether there was a writing." (Doc. 71, at 3.) But there is no evidence of these purported "numerous written agreements." The Court cannot read counsel's mind, and will not hazard a blind guess as to what he might be referring to. And because Mortensen brings multiple claims predicated on the notion that defendants agreed to modify the mortgage loan, any such agreement must comport with the Statute of Frauds for the reasons stated above. In other words, "whether there was a writing" is unquestionably at issue in this case, notwithstanding plaintiff's belief to the contrary, because the existence of such a writing is a legal prerequisite for Mortensen's contract claims.

acknowledged in his deposition that he "likes" their June 2009 modification proposal and wishes he had accepted it. How could defendants have possibly been negotiating in bad faith when they made a modification offer that Mortensen now regrets having turned down? Plaintiff's good faith and fair dealing claims fail as a matter of law.[22]

### C. Mortensen's Fraud-Based Claims.

Plaintiff also asserts claims that appear to sound in fraud. Under the heading "Fraud in the Inducement," the Complaint alleges that "[t]he bank informed Plaintiff he had to be in default in order to negotiate the mortgage loan modification," and that once he defaulted, defendants imposed "onerous and possibly illegal terms in order to modify his mortgage loan." (Complaint, ¶ 37.) Under the heading "Concealment in Negotiations," the Complaint alleges that "Plaintiff was never informed who the true owner of the note is." (*Id.*, ¶ 38.)

Under Alabama law, "[f]raud in the inducement consists of one party's misrepresenting a material fact concerning the subject matter of the underlying transaction and the other party's relying on the misrepresentation to his, her, or its detriment in executing a document or taking a course of action." *Oakwood Mobile Homes, Inc. v. Barger*, 773 So.2d 454, 459 (Ala. 2000) (emphasis omitted). A plaintiff alleging fraud in Alabama "must prove four elements: (1) a false representation; (2) that the false representation concerned a material existing fact; (3) that the plaintiff relied upon the false representation; and (4) that the plaintiff was damaged as a proximate result of the reliance." *Billy Barnes Enterprises, Inc. v. Williams*, 982 So.2d 494, 499 (Ala. 2007) (citation omitted); *see also Cook's Pest Control, Inc. v. Rebar*, 28 So.3d 716, 725 (Ala. 2009) ("To establish a *prima facie* case of fraudulent misrepresentation, a plaintiff must

---

[22]     The Court has no idea how plaintiff might counter defendants' summary judgment argument concerning the implied covenant of good faith and fair dealing because his brief does not even mention that category of causes of action. In some sense, though, it is ironic that Mortensen invokes the concept of good faith and fair dealing. After all, if any party is "do[ing] anything which will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract," *Lloyd Noland*, 837 So.2d at 267, it is Mortensen. Defendants have the right under the loan and mortgage agreements to foreclose on the Property if Mortensen defaults. He concedes that he defaulted more than two years ago, yet he then embarked on a campaign of conduct (including this baseless lawsuit) designed to frustrate, delay, impair and otherwise injure the lender and mortgagee's rights to the fruits of this contract. On this record, it is extraordinarily difficult to reconcile Mortensen's conduct to his own obligations under the very covenant of good faith and fair dealing he champions in the Complaint.

show: (1) that the representation was false, (2) that it concerned a material fact, (3) that the plaintiff relied on the false representation, and (4) that actual injury resulted from that reliance.") (citations omitted). Insofar as Mortensen's theory is one of promissory fraud (that is, a claim "based upon a promise to act or not to act in the future"), he must also show "proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised" and "proof that the defendant had an intent to deceive." *Southland Bank v. A & A Drywall Supply Co.*, 21 So.3d 1196, 1210 (Ala. 2008) (citations omitted).

Again, the premise of Mortensen's fraud-based claims is that defendants deceived him by telling him that "he had to be in default in order to negotiate the mortgage loan modification." (Complaint, ¶ 37.) On summary judgment, defendants contend that there is evidence of neither false representations nor reliance. The Court agrees. Plaintiff does not show that defendants promised him a generous loan modification if he would simply default, that they assured him he could have whatever mortgage relief he wanted if only he would default, that substantial principal and interest payments would be written off at the lender's expense if he would just stop paying, or the like. Rather, plaintiff's own testimony reflects that when he called defendants to request forbearance, they merely informed him that he would have to be in default to be considered for such relief. This was not a false statement. There is not a shred of evidence in the record that Countrywide would or did enter into forbearance agreements in favor of any borrower who was current on his payments.[23]

---

[23]    Plaintiff's counsel states in his brief in perfunctory fashion that "[t]here was a false representation that concerned a material existing fact." (Doc. 71, at 4.) What was that "false representation"? Plaintiff does not say, nor does he point to record evidence of any such false representation. The Court will not participate in this game of "hide the ball." Elsewhere in his brief, plaintiff's counsel writes that "Freddie Mac Guidelines" nowhere state that "the borrower has to default in order to get a mortgage modification." (*Id.* at 2.) Plaintiff attaches a two-page excerpt purportedly drawn from those Guidelines as Exhibit 1 to his summary judgment brief. But there is no evidence that those Guidelines governed Countrywide Servicing's conduct for this specific loan. Besides, close scrutiny of plaintiff's Exhibit 1 shows under the heading of "General Eligibility" a line item reading "Occupied Primary Residence." (Doc. 71, Exh. 1.) The Property at issue in this case was not an "occupied primary residence," but was instead an investment rental property. As such, the Guidelines to which plaintiff points on their face do not apply to this loan, and do not raise a genuine issue of fact as to the veracity of defendants' statement that they could not help Mortensen with forbearance because he was not in default.

As for the reliance element, defendants point to abundant evidence that Mortensen could not have relied on any promises of modification (had such promises been made, which again is not supported by the record in any form or fashion) in his decision to default.  The record is crystal clear that Mortensen was in dire financial straits by late 2008 and that his default in the Property's note was imminent.  In fact, Mortensen testified that his reason for contacting Countrywide Servicing was that he knew "the money was running out" and that he felt that the available assets to pay that note were "going to run out by the end of 2008."  (Mortensen Dep., at 242-43.)  Mortensen admits that when he had this conversation with Countrywide, he "knew that [he] would have to default" because he did not have the money to remain current on his payments.  (*Id.* at 248.)[24]  Deposition testimony from Mortensen's wife and bookkeeper unambiguously reinforce this notion.  Simply put, all evidence in the record shows that as of fall 2008, Mortensen was nearly broke and that his default was imminent, irrespective of what defendants did or did not tell him.  Because the record unequivocally shows that Mortensen would have defaulted -- even in the absence of purportedly fraudulent representations by defendants -- because he was simply out of money, he cannot meet the reliance element of his fraud claims as a matter of law.[25]

---

[24]     In an undated, signed "hardship letter," Mortensen explained that as of September 2008, "we could not go further" to make payments on the loans.  (Defendants' Exh. 9(a).)

[25]     In his summary judgment brief, plaintiff again misapprehends his evidentiary burden of showing genuine issues of material fact with respect to undisputed facts proffered by defendants.  Plaintiff's counsel states in conclusory fashion that "If Plaintiff would not have been told to default … he would not have had to default."  (Doc. 71, at 4.)  This flimsy proposition is contrary to all record evidence, and is apparently based on nothing more substantial than plaintiff's counsel's say-so.  That is simply not good enough under the Federal Rules of Civil Procedure.  *See, e.g., Taylor v. Holiday Isle, LLC*, 561 F. Supp.2d 1269, 1275 n.11 (S.D. Ala. 2008) ("Unadorned representations of counsel in a summary judgment brief are not a substitute for appropriate record evidence."); *Nieves v. University of Puerto Rico*, 7 F.3d 270, 276 (1st Cir. 1993) ("Factual assertions by counsel in motion papers, memoranda, briefs, or other such self-serving documents, are generally insufficient to establish the existence of a genuine issue of material fact at summary judgment.").  The same goes for the bald assertion in plaintiff's brief that "Plaintiff had numerous options available when he approached BAC about forbearance or a mortgage modification."  (Doc. 71, at 2.)  The record simply does not delineate any factual basis for such a statement, and it cannot be discerned what those "numerous options" might be.

Finally, to the extent that Mortensen's position is that defendants defrauded him by leading him to believe they would work to provide him a satisfactory modification if he would simply default, such assurances (even if they were made) were actually performed by defendants. After all, Mortensen admits that defendants offered him a June 2009 modification proposal that he turned down, even though in looking at it today he likes that proposal and wishes he had accepted it. If defendants made a modification offer following his default that Mortensen now feels is fair and reasonable (as he has admitted), then it is simply incomprehensible how he could assert a fraud claim against them based on any alleged representations that they would reasonably modify his loan on default. Placed in the context of Mortensen's own deposition testimony, his fraud-based claims cross the borders of absurdity.[26]

### D. Mortensen's Federal Statutory Claims.

The Complaint also recites a list of federal statutory claims for which Mortensen seeks monetary damages, including causes of action under the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA"); the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.* ("RESPA"); and the Home Ownership and Equity Protection Act, 15 U.S.C. § 1639 ("HOEPA").

In moving for summary judgment on these statutory causes of action, defendants advance compelling legal arguments. As a threshold matter, defendants maintain that none of these statutes even apply to this loan transaction. It is undisputed that Mortensen purchased the Property exclusively for use as a rental investment property in furtherance of his and his wife's real estate business. Mortensen never used, and never intended to use, the Property as a primary residence. This fact is significant because defendants identify provisions from all three statutes excluding from their ambit credit transactions made for business purposes. Moreover, case

---

[26]     By all appearances, the Complaint's reference to "Concealment in Negotiations" was a mere throwaway claim that plaintiff has not pursued during the course of this litigation. To the extent that Mortensen has not abandoned or waived that claim, defendants are entitled to summary judgment on it. To prove fraudulent suppression, plaintiff must show "(1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act; (4) action by the plaintiff to his or her injury." *AstraZeneca LP v. State*, 41 So.3d 15, 26 (Ala. 2009) (citations omitted). Even if Mortensen is correct that he "was never informed who the true current owner of the note is" (Complaint, ¶ 38), there is not a scrap of evidence that he was induced to act to his detriment based on that suppressed fact. This claim is a nonstarter.

authorities are legion for this proposition.[27]  In his summary judgment brief, plaintiff simply ignores this inconvenient truth, offering neither authority nor argument to show why TILA, RESPA and HOEPA have any application to a loan transaction undertaken solely to finance Mortensen's acquisition of investment property and not his principal dwelling.  The Court will not endeavor to formulate plaintiff's legal arguments for him.

Simply put, then, considerable authority demonstrates that plaintiff's statutory claims are meritless on their face because none of those federal statutes pertain to mortgage loans for investment or rental properties.  Moreover, plaintiff, having readily admitted that the mortgage loan in this case related solely to such an investment or rental property, makes no attempt to distinguish these authorities or to establish how TILA, RESPA and HOEPA could possibly apply to this transaction.  On that basis, defendants are entitled to entry of judgment in their favor as a matter of law as to each of those federal statutory causes of action.[28]

---

[27]  *See, e.g., Herschelman v. New Century Mortg. Corp.*, 2010 WL 4448224, *5 (D. Haw. Oct. 29, 2010) (where plaintiff's property is "primarily a rental property used for commercial purposes," plaintiff fails to state a claim for violation of TILA, HOEPA or RESPA); *Girgis v. Countrywide Home Loans, Inc.*, --- F. Supp.2d ----, 2010 WL 3290985, *6 (N.D. Ohio Aug. 20, 2010) ("the remedies available under HOEPA apply only to mortgages taken out on consumer's principal dwelling," not investment properties or secondary residences); *Mauro v. Countrywide Home Loans, Inc.*, --- F. Supp.2d ----, 2010 WL 2976506, *7 (E.D.N.Y. July 22, 2010) ("to the extent plaintiff obtained the loans in order to further her investment in the rental properties, the loan was clearly a 'business' loan as a matter of law and, therefore, exempt from the coverage of TILA"); *LaPorte v. Countrywide Home Loans, Inc.*, 2009 WL 2905934, *2 (E.D. Tenn. Sept. 3, 2009) ("plaintiff in the instant action obtained the property for commercial rental purposes; RESPA and TILA therefore do not apply to the mortgage"); *Antanuos v. First Nat'l Bank of Arizona*, 508 F. Supp.2d 466, 471 (E.D. Va. 2007) ("Credit transactions secured by real or personal property used for other purposes, such as commercial rental property, fall outside the scope of TILA's coverage.").

[28]  Because of this ruling, it is unnecessary to explore in detail defendants' alternative legal arguments for summary judgment as to these federal claims.  Nonetheless, the Court notes that the overwhelming majority of the alleged statutory violations identified in the Complaint (such as omitted disclosures, understatement of finance charge, and so on) relate to the initial loan transaction, which occurred in December 2006.  As to those claims, the Court agrees with defendants that Mortensen's claims are time-barred.  After all, under TILA and HOEPA, claims for money damages must commence within one year following the alleged violation. 15 U.S.C. § 1640(e).  The date of the violation is determined based on the date of the consummation of the transaction.  Similarly, under RESPA, any action must be filed within one year "from the date of the occurrence of the violation." 12 U.S.C. § 2614.  As for plaintiff's other TILA, RESPA and HOEPA claims, Mortensen fails to identify any provision of those statutes (Continued)

-19-

### E. Mortensen's Remaining Claims (Outrage / Slander of Title / Alabama Code).

The Complaint also purports to state causes of action under Alabama law for intentional infliction of emotional distress, slander of title, and violation of Alabama statutory foreclosure provisions found at Alabama Code §§ 35-10-9 and 35-10-13.[29] Defendants are entitled to judgment as a matter of law on all of these claims.

To recover on a claim of intentional infliction of emotional distress (otherwise known as outrage) under Alabama law, a plaintiff must prove that the defendant's conduct "(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *S.B. v. Saint James School*, 959 So.2d 72, 93 (Ala. 2006) (citations omitted). To satisfy the "extreme" element, the plaintiff must prove "conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.* (citations omitted). This tort is limited to "egregious circumstances" and is "only

_____

that would prohibit lenders from either (i) requiring borrowers to go into default before negotiating or entering into forbearance agreements or loan modifications, or (ii) imposing penalties, fees and interest (all based on the borrower's history of missing numerous required loan payments) in such modification negotiations that would increase the borrower's monthly payments and principal balance. It is up to plaintiff to explain how this alleged conduct amounts to a violation of any of the three statutes he cites, yet he has made no effort to do so.

[29] The scattered, confusingly labeled, everything-but-the-kitchen-sink Complaint renders it extraordinarily difficult to determine which claims are legitimately in play and which are merely legal concepts that plaintiff believes have some application to this case, albeit not as separate causes of action. This Order separately identifies and addresses every unique cause of action that the Court believes Mortensen to be pursuing. However, under the heading "Affirmative Defenses to the Foreclosure Action," the Complaint recites additional concepts like "Original Note Not Provided," "Unconscionability," "Not a Proper Party to Foreclose," "Unjust Enrichment," "Unclean Hands," "Assumption of Risk," and "Consent." (Complaint, ¶¶ 28-41.) Nothing in the pleadings, and nothing in plaintiff's briefs, suggests that he is attempting to parlay these particular concepts into any legal claims or causes of action distinct from those expressly addressed herein. This Court will not parse plaintiff's pleadings to attempt to advance causes of action that he has not, but will instead accept the characterization of the Complaint that these theories are mere "affirmative defenses" to a foreclosure proceeding that has not happened, rather than claims for damages or equitable relief on Mortensen's part. In any event, most of these concepts are subsumed in, and are adequately considered and rejected, in the summary judgment discussion of the other claims at issue in this litigation. No constructive purpose would be served by retreading that ground here.

found in rare circumstances." *Hamilton v. City of Jackson*, 508 F. Supp.2d 1045, 1060 (S.D. Ala. 2007). Mortensen's circumstances do not fall into that narrow category for which the tort of outrage is recognized under Alabama law. In particular, defendants' alleged conduct of telling Mortensen he was not eligible for forbearance unless he was in default, then failing to provide him a loan modification that was as generous as he had hoped after he defaulted, is not "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency." Plaintiff does not even attempt to argue otherwise in his summary judgment brief. To do so would have been an exercise in futility. Defendants' Rule 56 Motion will be granted as to the outrage claim.

Next, the Complaint alleges a "slander of title" claim on the theory that defendants' actions "have resulted in the risk of Plaintiff wrongfully losing title to his property." (Complaint, ¶ 57.) Plaintiff has explained that the sole basis of this claim is his contention that defendant BAC Servicing "does not have the right to foreclose on the Mansion St. Property" because it does not hold the note or the mortgage. (Doc. 71, at 5.) Under Alabama law, the elements of a slander of title action are "(1) Ownership of the property by plaintiff; (2) falsity of the words published; (3) malice of defendant in publishing the false statements; (4) publication to some person other than the owner; (5) the publication must be in disparagement of plaintiff's property or the title thereof; and (6) that special damages were the proximate result of such publication (setting them out in detail)." *Folmar v. Empire Fire and Marine Ins. Co.*, 856 So.2d 807, 809 (Ala. 2003) (citations omitted). On summary judgment, defendants point to the dearth of record evidence of any false statements of fact published by defendants that in any way disparaged his title. After all, Mortensen admits that he granted a mortgage on the Property and that he defaulted on the mortgage, which would give the mortgagee a right to foreclose on the Property. In response, plaintiff's counsel does not identify any false or disparaging statements but simply asks this Court to accept on faith that "Plaintiff's research indicates that the claim is proper." (Doc. 71, at 5.)[30] Much more is required for Mortensen to withstand summary judgment on this cause of action.[31]

---

[30]     The only case that Mortensen cites in support of his "research" is *Williams v. Phillips Petroleum Co.*, 453 F. Supp. 967 (S.D. Ala. 1978), as to which he provides no explanatory verbiage. As to slander of title, the *Williams* decision states that "[a] good faith claim with reference to plaintiffs' property based upon color of title on the part of defendants (Continued)

The Complaint also recites separate claims for damages under Alabama Code §§ 35-10-9 and 35-10-13 pertaining to the foreclosure sale of the Property. (Complaint, ¶¶ 56, 58.) The former section simply states that real estate sales contrary to the provisions of Title 35, Article 1, "shall be null and void." Ala. Code § 35-10-9. But no foreclosure sale has occurred in this case, so § 35-10-9 plainly has no application at this time. And the latter statutory provision merely prescribes minimum standards for notice of sale. Plaintiff apparently contends that notices of previous announced foreclosure sales of his property do not comport with those minimum standards. But those foreclosure sales were canceled, and the record is devoid of any evidence or any reason to believe that defendants will not comply with the notice provisions of § 35-10-13 in connection with any future foreclosure sale of the Property. As such, Mortensen's purported causes of action for damages under these statutes fail on their face.

### F. BAC Servicing's Counterclaims.

In addition to moving for summary judgment on all of Mortensen's claims against it, defendant BAC Servicing also requests entry of judgment in its favor as to certain Counterclaims. Specifically, BAC Servicing seeks summary judgment on its declaratory judgment cause of action in Count I (in the form of a declaration that the mortgage and note are in default and that BAC Servicing is authorized to foreclose the mortgage), the breach of contract cause of action in Count III (in the form of a monetary judgment on the defaulted note), and the

---

means that the plaintiffs' claim is not actionable in this state." *Id.* at 976. The summary judgment record supports but a singular reasonable inference that BAC Servicing has at least a colorable right to foreclose on the Property, as to which Mortensen has admittedly defaulted. There is absolutely no reason to believe that BAC Servicing is not acting in good faith in pursuing its colorable right to foreclose; therefore, *Williams* (the only case cited by Mortensen) actually weighs heavily in favor of granting defendants' summary judgment motion on the slander of title claim.

[31]     Besides, as discussed *infra*, Mortensen's factual premise that BAC Servicing is not entitled to foreclose because it does not hold the note and mortgage is demonstrably and unequivocally false under the evidence of record in this case. Because the entire thrust of Mortensen's slander of title claim is that BAC Servicing is not the proper entity to foreclose on the Property, and because the record unambiguously refutes that notion, the slander of title claim fails on this basis, as well.

money had and received cause of action in Count IV (also in the form of a monetary judgment on the defaulted note).[32]

Plaintiff readily admits that he executed the note and the mortgage, that he granted a mortgage interest in the Property to defendant MERS, that MERS later assigned the mortgage to defendant Countrywide Servicing, and that plaintiff stopped making required monthly payments on the mortgage more than two years ago, such that the loan is now in default. The plain terms of the note provide that if Mortensen does "not pay the full amount of each monthly payment on the date it is due, [he] will be in default" and the note holder will have the right to accelerate all sums due under the note after notice. (Defendants' Exh. 3 (doc. 66-3), ¶ 6(B).) Pursuant to the mortgage, if default is not cured in a timely manner (which it unquestionably was not in this case), "Lender at its option may require immediate payment in full of all sums … and may invoke the power of sale," pursuant to which the lender is empowered to "sell the Property to the highest bidder at public auction" and apply the proceeds to sums owed under the note (after disbursement of sale expenses). (Defendants' Exh. 1 (doc. 66-1), ¶ 22.)

On these facts, it cannot be reasonably disputed (and Mortensen does not identify any viable factual or legal basis for disputing) that Mortensen has breached his payment obligations under the promissory note, that the lender is entitled to a money judgment for unpaid principal, interest and other amounts due and owing under the promissory note, and that the foreclosure remedy is expressly authorized in these circumstances by the mortgage document that Mortensen signed. Nonetheless, Mortensen opposes BAC Servicing's motion for summary judgment primarily because he contends that entity "has not yet shown that it is the holder of the Note and Mortgage." (Doc. 71, at 5.)[33] Plaintiff is wrong.

---

[32] BAC Servicing has not moved for summary judgment as to Count II of its Counterclaims. Count II is styled as a claim for equitable relief, and is pleaded in the alternative solely to address the contingency that "this Court [may] ultimately determine that the Mortgage and/or Note are void or unenforceable in any respect." (Counterclaim (doc. 4), ¶ 16.) Because the undersigned concludes herein that both mortgage and note are valid and enforceable as a matter of law, Count II of BAC Servicing's Counterclaims is **moot**.

[33] Other than his objection to BAC Servicing's standing under its Counterclaims, Mortensen's brief only recites one ground for opposing entry of summary judgment in BAC Servicing's favor. Specifically, plaintiff contends that "[t]he Court needs to rule on the issue of the split Note and Mortgage" (doc. 71, at 5) antecedent to deciding the Counterclaims. Plaintiff raised this "splitting" issue in his own Motion for Summary Judgment (doc. 54). Via separate (Continued)

Everyone agrees that MERS was originally named as mortgagee in the security instrument. Likewise, everyone agrees that MERS assigned its interest in the mortgage to Countrywide Servicing in March 2009. For reasons already set forth herein, the Court finds that the record is absolutely clear that Countrywide Servicing is now known as BAC Servicing, such that BAC Servicing is the present holder and assignee of Mortensen's mortgage. Moreover, with respect to the note, it is undisputed that the original lender was Countrywide Home Loans, Inc., which subsequently assigned the note to non-party Freddie Mac. Defendants have submitted uncontroverted evidence that, at all times material to this action, that note has been serviced by Countrywide Servicing, which (again) is now known as BAC Servicing, and that BAC Servicing presently holds the note. By calling BAC Servicing the holder of the note, the Court means to say that BAC Servicing physically has the original note in its possession, which again is established by unchallenged record evidence. *See* Ala. Code § 7-1-201(20) (defining "holder" as "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession"). By virtue of its uncontroverted status as holder of the note, BAC Servicing is entitled to enforce it. *See* Ala. Code § 7-3-301 ("Person entitled to enforce an instrument means (i) the holder of the instrument").

In short, plaintiff has stubbornly insisted that BAC Servicing "does not have the right to foreclose" because there is no proof that it holds the note and the mortgage, or that Countrywide Servicing became BAC Servicing. In making this argument, without even a scintilla of record evidence to support it, plaintiff has pinned his hopes on a red herring and forced opposing counsel and this Court to embark on a time-wasting fool's errand to verify what was obvious from the outset, to-wit: That BAC Servicing is entitled to enforce the note and mortgage against Mortensen. That mission having now been completed, the Court **overrules** all of plaintiff's objections to the Counterclaims predicated on his factually and legally baseless challenges to BAC Servicing's standing to enforce the note and mortgage.

---

Order entered on this date denying Mortensen's Motion, the undersigned has set forth in detail why plaintiff's "splitting" argument is meritless under both applicable law and the facts of this case. In light of that determination, the fact that the note and mortgage were initially issued in the names of different defendants poses no impediment to the granting of BAC Servicing's Rule 56 Motion. Plaintiff's objection to the contrary is overruled.

In light of the foregoing determinations, the Court concludes that BAC Servicing is entitled to entry of judgment as a matter of law on Counts I, III and IV of its Counterclaims. Mortensen defaulted on his mortgage loan, and BAC Servicing is entitled to enforce rights conferred by Mortensen through the loan origination and mortgage documents, including foreclosure and execution of a judgment for money damages for amounts owed under the mortgage. As for the amount of that money judgment, the summary judgment record establishes that as of October 26, 2010, Mortensen owed the following sums under the note and mortgage: $107,752.65 in unpaid principal, $13,947.24 in accrued interest, and $4,733.08 in accrued fees, escrow payments, and late charges. (Gershon Decl., ¶ 3(i) & Exh. F.) Plaintiff has disputed none of these calculations or amounts in his summary judgment brief. The record further shows that, following October 26, 2010, interest has continued to accrue on the unpaid principal at the daily rate of $17.71 (or $107,752.65 * .06 / 365). (*Id.*) Again, plaintiff has not challenged the validity of this daily interest accrual rate on the unpaid principal. Calculated through today's date, then, the total interest owed by Mortensen is $14,956.71 (the original $13,947.24, plus $1,009.47 accrued following October 26, 2010). This yields a total money damages figure, inclusive of all principal, interest, and fees/escrow payments/charges, of **$127,442.44**. Judgment will be entered in BAC Servicing's favor in that amount as to Counts III and IV of the Counterclaims.

IV.     **Conclusion.**

For all of the foregoing reasons, it is hereby **ordered** as follows:

1.      Defendants' and Counterclaim Plaintiff's Motion for Summary Judgment (doc. 64) is **granted**;

2.      All claims asserted by plaintiff, Robert Mortensen, against all defendants are **dismissed with prejudice** because there are no genuine issues of material fact and defendants are entitled to judgment in their favor as to all such causes of action;

3.      With respect to Count I of counterclaim plaintiff BAC Home Loans Servicing, LP's Counterclaim, the Court **finds and declares** that (i) Robert Mortensen is in default under the mortgage and note and that BAC Servicing has properly accelerated all sums due under the note; and (ii) BAC Servicing is authorized to

foreclose the mortgage in accordance with the procedures set forth in the mortgage and note;

4. With respect to Counts III and IV of the Counterclaim, judgment will be entered in favor of BAC Servicing and against Mortensen on the breach of contract and money had and received causes of action, in the total amount of **$127,442.44**; and

5. Count II of the Counterclaim is **dismissed as moot**.

Because this Order resolves all claims and issues joined in this action, the Clerk of Court is **directed** to close this file for administrative and statistical purposes.

A separate judgment will be entered.

DONE and ORDERED this 23rd day of December, 2010.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE