IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ROBERT MORTENSEN, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 09-0787-WS-N |
| ) | |
| MORTGAGE ELECTRONIC ) | |
| REGISTRATION SYSTEMS, INC., *et al.*, ) | |
| ) | |
|     Defendants. ) | |
| ) | |
| BAC HOME LOANS SERVICING, LP, ) | |
| ) | |
|     Counterclaim Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ROBERT MORTENSEN, ) | |
| ) | |
|     Counterclaim Defendant. ) | |

**ORDER**

This matter comes before the Court on defendant / counterclaim plaintiff BAC Home Loans Servicing, LP's Motion for Award of Attorney's Fees and Expenses (doc. 82).[1] The Motion has been briefed and is ripe for disposition at this time.

**I.    Procedural Background.**

In December 2009, Robert Mortensen (by and through counsel of record) sued BAC Home Loans Servicing, LP ("BAC Servicing"), and four other defendants on well over a dozen

---

[1] Also before the Court are several filings relating to that Motion, including plaintiff's three overlapping opposition memoranda (docs. 90, 92, 93) -- all of which were filed after the briefing deadline had expired -- as well as a Reply (doc. 91) and a Supplement to the Motion (doc. 85) filed by BAC Servicing. The Court has reviewed all of these materials, as well as all other portions of the file deemed relevant.

statutory and common-law theories.[2] Mortensen's stated basis for bringing these claims was that BAC Servicing and other defendants had failed to provide him with a mortgage loan modification to his liking after he became unable to meet his payment obligations on the existing loan, and then threatened to initiate foreclosure proceedings. Beginning with his Complaint, and at every step thereafter, Mortensen consistently stated that the relief he sought in this action included not only money damages, but also injunctive relief "enjoining any foreclosure sale" of the subject property. In other words, Mortensen expressly sought to use this lawsuit to block BAC Servicing from exercising its contractual remedies arising from his admitted default on the loan.

BAC Servicing responded by bringing counterclaims against Mortensen for, *inter alia*, breach of contract based on Mortensen's default of the promissory note he had used to obtain funds to purchase the rental property in question. BAC Servicing's position was that Mortensen had executed a note in the principal amount of $110,051, had executed a mortgage on the property to secure repayment, and had subsequently defaulted, thereby entitling BAC Services to foreclose the mortgage and to a money judgment for the owed funds. Mortensen has never disputed that he is, in fact, in default on the subject loan.

This action was fiercely litigated from its inception. Indeed, the docket sheet reflects a contentious discovery period including multiple motions to compel, as well as unsuccessful Rule

---

[2] Mortensen's Complaint was a classic example of an improper "shotgun pleading." It reeled off federal statutory claims under the Truth in Lending Act, Real Estate Settlement Procedures Act, and Home Ownership and Equity Protection Act; as well as state-law claims for breach of implied covenant of good faith and fair dealing, intentional infliction of emotional distress, violation of Alabama Code § 35-10-9, slander of title, and violation of notice of sale requirements under Alabama Code § 35-10-13. In addition to these causes of action, Mortensen's Complaint interposed numerous additional legal theories under the confusing heading "Affirmative Defenses to the Foreclosure Action," including claims of "original note not provided," unconscionability, improper party to foreclose, breach of implied covenant of good faith and fair dealing, breach of contract, concealment in negotiations, unclean hands, assumption of risk, and consent. As the Court has previously observed, "In neither his pleadings nor his Rule 56 briefs has Mortensen endeavored to flesh out or explain the vast majority of these claims, or even to link them to particular defendants, facts or legal elements; rather, the bulk of these claims appear to have been pleaded to obfuscate, proliferate, misdirect and otherwise bog down these proceedings in a mass of ill-fitting, make-work legal theories that have consumed considerable resources of defendants and this Court, while plaintiff fails to exert even minimal effort to advance or defend many of them." (Doc. 79, at 2-3 n.5.)

12(b) and Rule 15 motions by Mortensen.  At the close of discovery, the parties filed cross-motions for summary judgment.  After briefing, the Court entered a pair of lengthy Orders (docs. 78 and 79) on December 23, 2010.  Those rulings denied Mortensen's Motion for Summary Judgment, granted defendants' and BAC Servicing's Motion for Summary Judgment, dismissed all of Mortensen's claims against all defendants, declared that Mortensen is in default under the mortgage and note and that BAC Servicing is entitled to foreclose the mortgage, and awarded BAC Servicing damages of $127,442.44 on its breach of contract and money had and received claims against Mortensen.  A corresponding Judgment in BAC Servicing's favor was entered on that date.

More than a month later, on January 29, 2011, Mortensen filed a Motion for Rehearing (doc. 84) seeking reconsideration of the December 23 summary judgment orders and judgment.  Via Order (doc. 88) entered on February 9, 2011, the undersigned denied this request on the grounds that Mortensen's Motion was in derogation of well-settled legal standards for reconsideration, that he was repeating (often in verbatim form) arguments the Court had previously considered and rejected, and that he improperly sought to develop previously available facts and legal arguments for the first time via his post-judgment motion.

BAC Servicing now petitions the Court for an award of its expenses and attorney's fees incurred in this action, which it contends Mortensen is contractually obligated to pay pursuant to the terms of the applicable mortgage and promissory note.  All told, BAC Servicing seeks to recover $112,821.20 in attorney's fees and $9,651.61 in expenses, for a total fees and expenses award of $122,472.81.  Movant has submitted nearly 200 pages of itemized billing records, as well as a detailed Declaration of Alan Warfield ("Warfield Decl.") to document those fees and expenses, and a Declaration of Patrick Sims ("Sims Decl.") as further evidence of the reasonableness of the rates charged and hours accrued by the billing attorneys.  (*See* doc. 85.)

**II.    Defendant's Entitlement to Attorney's Fees and Expenses.**

*A.    Fees and Expenses are Recoverable in this Action.*

The threshold question, of course, is whether BAC Servicing is entitled to a fee award at all.  "Alabama follows the American rule, whereby attorney fees may be recovered if they are provided for by statute or by contract …." *Jones v. Regions Bank*, 25 So.3d 427, 441 (Ala. 2009) (citations omitted); *see also Battle v. City of Birmingham*, 656 So.2d 344, 347 (Ala. 1995)

(same).³ Here, BAC Servicing maintains that attorney's fees were provided for by the subject contracts, namely, the Mortgage and Note. In this context, the Alabama Supreme Court has explained that "[t]he allowance of attorney's fees as a part of the secured debt is dependent upon the agreement of the contracting parties, within the terms of which the claim for fees must fall." *Taylor v. Jones*, 276 So.2d 130, 134 (Ala. 1973) (citation omitted). As such, the initial inquiry is whether BAC Servicing's claim for fees falls within the scope of the relevant agreements authorizing recovery of attorney's fees.

BAC Servicing identifies two contractual provisions that it contends bind Mortensen to pay its attorney's fees and expenses. First, the Note executed by Mortensen includes his acknowledgment that if he defaults and the note holder accelerates the debt, "the Note Holder will have the right to be paid back by [Mortensen] for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees." (Doc. 66, Exh. 3, § 6(E).) Second, the Mortgage executed by Mortensen specifies that in the event of a default that is not timely cured, "Lender at its option may require immediate payment in full of all sums … and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including but not limited to, reasonable attorneys' fees and costs of title evidence." (Doc. 66, Exh. 1, § 22.)

These provisions are valid and enforceable. Under Alabama law, "[a] mortgagee … may recover the attorney fees incurred in the enforcement of the mortgage where the mortgage contractually imposes a duty on the mortgagor to pay those fees." *Austin Apparel, Inc. v. Bank of Prattville*, 872 So.2d 158, 166 (Ala.Civ.App. 2003); *see also Lunceford v. Monumental Life*

---

³ The Court applies Alabama law to the Motion for Award of Attorney's Fees and Expenses with respect to fee-shifting provisions in both the Mortgage and the Note because: (i) movant cites to Alabama precedents on this issue without objection or dissent from Mortensen; (ii) the Mortgage instrument provides that it is governed by "the law of the jurisdiction in which the Property is located" (doc. 66, Exh. 1, ¶ 16), and the subject property lies in Foley, Alabama; (iii) "a federal court sitting in diversity will apply the choice of law rules for the state in which it sits," *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139 (11th Cir. 2005); (iv) under Alabama law, where the parties have not specified a particular sovereign's law to govern, courts "follow the principle of *lex loci contractus*, applying the law of the state where the contract was formed," *Stovall v. Universal Const. Co.*, 893 So.2d 1090, 1102 (Ala. 2004); and (v) the Note reflects that that contract was formed in Gulf Shores, Alabama (doc. 66, Exh. 3, at 1).

*Ins. Co.*, 641 So.2d 244, 247 (Ala. 1994) (opining that borrower "had a contractual duty to pay attorney fees incurred by" lender where "mortgage contract expressly provided that the mortgagees could recover attorney fees in their efforts to enforce any obligation pertaining to the mortgage"); *Wells Fargo, N.A. v. Pierre*, 2010 WL 1753789, *5 (M.D. Ala. Apr. 13, 2010) (under Alabama law, "a mortgagee may recover attorney fees incurred when the contract imposes a duty on the mortgagor to pay those fees"). Thus, the fee-shifting provisions of the Mortgage and Note are both cognizable and enforceable under Alabama law.[4]

### B. *No Distinction Between Offensive and Defensive Fees.*

Significantly, Alabama law does not restrict the fees recoverable under contractual fee-shifting provisions to those that a lender incurs in pursuit of direct claims to enforce mortgage and note obligations. Rather, a lender may also recover its attorney's fees incurred in defending against the borrower's claims challenging the validity or enforceability of a mortgage or note. The leading Alabama Supreme Court case on a mortgagee's right to recover attorney's fees for defending against a mortgagor's claims is *Taylor v. Jones*, 276 So.2d 130 (Ala. 1973). In *Taylor*, the borrower filed suit seeking a declaration that it owed no indebtedness to the lender under a mortgage, and the lender likewise brought claims against the borrower requesting leave to foreclose. After the lender prevailed, the lender sought recovery of attorney's fees accrued in litigating both the offensive and defensive claims, pursuant to a provision in the note that obligated the borrower "to pay all costs of Collecting or Securing, or attempting to Collect or Secure, this note, including a reasonable attorney's fee." *Id.* at 133. The *Taylor* Court affirmed an award of attorney's fees under that provision, even for fees incurred in the lender's defense of the borrower's claims, reasoning as follows: "The evidence is clear that at the inception, when the matter was turned over to an attorney the indebtedness could have been liquidated by paying principal, interest and a nominal attorney's fee. The [borrower] did not elect to allow collection at that time and consequently [the lender] was caused to incur substantial attorney's fees." *Id.*[5]

---

[4] "An award of attorney fees, where permissible, is a matter within the discretion of the trial court and will not be reversed on appeal absent a showing that the trial court abused its discretion." *Jones v. Sherrell*, 52 So.3d 527, 531 (Ala.Civ.App. 2010) (citations omitted).

[5] Other Alabama authorities have reached the same result through similar reasoning. *See Hunt v. NationsCredit Financial Services Corp.*, 902 So.2d 75, 82 (Ala.Civ.App. 2004) (where borrower signed note promising to pay costs of collection, including reasonable (Continued)

Under *Taylor* and its progeny, then, it is unnecessary to separate BAC Servicing's attorney's fees into those incurred in pursuing its direct claims against Mortensen, on the one hand, and those incurred in defending against Mortensen's claims, on the other. The record shows that Mortensen initiated his myriad claims against BAC Servicing for the express purpose of canceling and invalidating his repayment obligations, as well as BAC Servicing's foreclosure rights, under the Mortgage and Note. As such, BAC Servicing's costs of defending against Mortensen's claims plainly constitute "costs and expenses in enforcing this Note" and "expenses incurred in pursuing the remedies provided" in the Mortgage, such that those expenses (including reasonable attorney's fees) are recoverable under Alabama law and the relevant contracts. For purposes of BAC Servicing's fee petition, then, the Court will not distinguish between attorney's fees relating to its defense of Mortensen's claims and those relating to its prosecution of its claims against Mortensen. All are equally recoverable both as a matter of contract and under Alabama law.

### C. *Plaintiff's Counterarguments Lack Merit.*

In response to BAC Servicing's Motion, Mortensen submits a series of arguments against awarding fees and costs. First, he suggests that he should be excused from liability for BAC Servicing's attorney's fees because he "has no extra funds." (Doc. 92, at 1.) On this point, Mortensen elaborates that "[i]n some jurisdictions, if the Plaintiff lacks the funds to pay the attorneys fees they are excused from paying." (*Id.* at 1-2.) But Mortensen offers neither argument nor authority that Alabama recognizes an ability-to-pay defense to the contractual award of attorney's fees.[6] To develop a hardship argument properly, plaintiff would have needed

---

attorney's fee, the "mortgagee is entitled to attorney fees for defending an action challenging the terms of a promissory note or a mortgage"); *Johnson v. U.S. Mortg. Co.*, 991 F. Supp. 1302, 1307 (M.D. Ala. 1997) (recognizing that, under Alabama law, "the mortgagee could still recover fees for defending against the mortgagors' declaratory action under the terms of the note, which provided for a reasonable attorney's fee in connection with the collection or securing of the note").

[6] Nor does Mortensen present evidence to support his lawyer's conclusory statement that Mortensen "has no extra funds." As the Court has explained repeatedly in this litigation, federal courts do not blindly accept counsel's representations as to operative facts of the case during motion practice. (*See* doc. 88, at 4; doc. 78, at 5-6; doc. 79, at 16 n.23 & 17 (Continued)

to furnish the Court with (i) case authorities showing that Alabama recognizes such a defense to the enforcement of contractual fee-shifting provisions, and (ii) record evidence that Mortensen is indeed unable to pay any judgment entered against him. Plaintiff has satisfied neither prong.[7]

Second, Mortensen attempts to reopen the merits of this action by arguing that his claims were "not frivolous." (Doc. 92, at 2; doc. 93, ¶ 18.) Whether they were or were not frivolous is irrelevant for purposes of the fee petition. What is relevant is that when the indebtedness came due, rather than attempting to liquidate it (as Mortensen says he could have done), he did not allow collection and enforcement of the lender's remedies at that time, but instead filed a sprawling 18- or 19-count complaint against the lender seeking to enjoin it from pursuing contractual remedies and to recover monetary damages. By electing that course of action, Mortensen forced BAC Servicing to incur substantial attorney's fees to vindicate its contractual rights to enforce the Note and foreclose the Mortgage. By the plain terms of the Note and Mortgage that he signed, Mortensen is liable to BAC Servicing for those attorney's fees, irrespective of any frivolity determination concerning his underlying claims.

Third, Mortensen apparently forgets the procedural posture of this case, because he re-argues summary judgment. He recites the Rule 56 standard, explains why he believes he is entitled to summary judgment on all of his claims, and demands "Summary Judgment against the Defendants," as well as "damages of no less than Two Hundred Thousand Dollars ($200,000) from the Defendants." (Doc. 93, at 6-9.) The cross-motions for summary judgment were ruled

---

n.25.) Yet Mortensen's counsel once again presents his own unvarnished representations as fact, with no supporting evidence of any kind. This is improper.

[7] At best, Mortensen argues in his third brief in opposition to the Motion for Attorney's Fees that "there are numerous Alabama cases where the Court considered ability to pay when determining the legality of ordering a party to pay another party's attorney's fees." (Doc. 93, ¶ 21.) However, the two cases he cites for this proposition, *McRae v. Seafarers' Welfare Plan*, 726 F. Supp. 817 (S.D. Ala. 1989) and *Stevenson v. International Paper Co., Mobile, Alabama*, 352 F. Supp. 230 (S.D. Ala. 1972), are inapposite. *McRae* addresses Eleventh Circuit guidelines for award of attorney's fees under ERISA. *See McRae*, 726 F. Supp. at 821-22. Likewise, *Stevenson* (which makes no mention of ability to pay, in any event) concerns a statutory award of attorney's fees under Title VII. *See Stevenson*, 352 F. Supp. at 249. Neither decision sheds light on whether Alabama courts applying Alabama law recognize an "ability-to-pay" defense to contractual claims for award of attorney's fees.

on four months ago. Mortensen's motion for rehearing was denied more than two months ago. BAC Servicing's attorney's fee petition does not confer license on Mortensen to ignore those rulings, reopen summary judgment briefing, and seek a third bite at the apple. Besides, Mortensen's disagreement with the undersigned's resolution of the case on summary judgment is not a valid defense to BAC Servicing's request for award of attorney's fees, as expressly provided for by the contracts Mortensen signed.[8]

Fourth, Mortensen suggests that attorney's fees should be denied because "[t]he bank created this case" and "the bank created its own problem." (Doc. 92, at 3-4.) These statements are false. Mortensen alone created this case. He sued BAC Servicing, not the other way around. And Mortensen created the problem by defaulting on monthly payments for his mortgage loan obligation in October 2008. Plaintiff's attempts to shift the blame to BAC Servicing for his default are disingenuous, given his testimony that his "money was running out" and that he "knew that [he] would have to default" in 2008 because he lacked the funds to stay current on his payments. (Mortensen Dep., at 242-43, 248.) What's more, when defendants offered Mortensen a loan modification in June 2009 that would have reduced his monthly payments and allowed him to become current on his loan in short order, all without a large lump-sum payment for considerable past due sums, Mortensen refused, even though he now admits that he wishes he had accepted the offer and that he "made a mistake" in turning it down. (*Id.* at 294, 306.) In light of this clear record evidence, Mortensen's revisionist rhetoric (*i.e.,* that he defaulted only at the "Lender banks [*sic*] insistence," that "[t]he bank could and should have done better" (doc. 92, at 3-4) in the modification process, that BAC Servicing was "illegally stealing" property on whose mortgage he had defaulted years earlier, and that BAC Servicing created this case) all rings hollow. It was Mortensen who stopped making payments and never resumed them (except

---

[8] Plaintiff does not advance his cause by ignoring those inconvenient summary judgment rulings. For example, he carries on at length that BAC Servicing fraudulently induced him to breach the loan agreement. (Doc. 92, at 4; doc. 93, ¶¶ 13-19, 23-25.) But the Court has already held that Mortensen's fraudulent inducement claim fails as a matter of law for want of evidence of either a false representation or reliance on same. (Doc. 79, at 16-18; doc. 88, at 3-4.) In continuing to press these issues, plaintiff not only disregards court rulings in this case, but also takes unwarranted and inappropriate liberties with the record, distorting the facts (and even his own deposition testimony) to bolster his arguments. The Court has previously set forth in detail its reasons for dismissing Mortensen's fraud claims, and will not reiterate that reasoning now simply because plaintiff shields his eyes to the existence of those Orders.

to do so briefly a year later in a misguided attempt to take advantage of what he knew to be a mistaken communication). It was Mortensen who made what he calls the "mistake" of rejecting a favorable modification offer based on his own subjective belief that the lender should simply write off thousands of dollars that he owed because he had become overextended financially.[9] It was Mortensen who filed a shotgun complaint numbering at least 18 causes of action against BAC Servicing, in an attempt to wriggle out of his mortgage obligations. It was Mortensen who unreasonably proliferated and multiplied this action at every turn by taking one unreasonable position after another in discovery and summary judgment. And it is Mortensen who must bear the consequences of this series of regrettable strategic decisions by paying BAC Servicing's attorney's fees incurred in this action, as he promised to do in both the Note and Mortgage.

Fifth, Mortensen contends that BAC Servicing "voluntarily consented to and encouraged all alleged actions of Plaintiff and should therefore be precluded from receiving attorneys fees, costs and expenses." (Doc. 92, at 5.) This statement is likewise counterfactual. BAC Servicing neither consented to nor encouraged Mortensen to default on his promise to make regular monthly payments on the Note. BAC Servicing neither consented to nor encouraged Mortensen to refuse reasonable modification offers and never resume making regular monthly payments. BAC Servicing neither consented to nor encouraged Mortensen to file a bloated complaint suing it on every theory imaginable, without regard to whether there was even a whiff of factual or legal support for such claims. BAC Servicing neither consented to nor encouraged Mortensen to obstruct, delay and otherwise hinder the discovery process during this litigation, or to file meritless Rule 12(b) and 56 motions of his own. In short, there is no factual basis for Mortensen's "consent" argument. He forced BAC Servicing to expend considerable sums of money to preserve and pursue its remedies under the Note and Mortgage, and he is contractually obligated to pay BAC Servicing's reasonable attorney's fees incurred in that endeavor.

---

[9] It is telling that Mortensen now rationalizes his default by saying that "Plaintiff defaulted with the hope and under the assumption that they would give him a better mortgage than he currently had." (Doc. 92, at 3.) These subjective "hopes" and "assumptions," untethered to anything the lender ever said or did, were manifestly unreasonable. The lender was under no duty to give Mortensen whatever loan modification he might want, or to cross out the specific, clear terms on which the parties had agreed. And plaintiff never identified any legal theory that would bar BAC Servicing from insisting that Mortensen repay the full amount even after he went into default.

### *D. Conclusion.*

The Court recognizes that, under Alabama law, attorney's fee provisions in mortgages and promissory notes "are not to be used to oppress the debtor." *Graham v. O'Neal*, 4 So.2d 897, 900 (Ala. 1941). However, Alabama law also provides that such provisions are entirely proper "for indemnity to the payee and for his protection and reimbursement." *Id.* More generally, if a mortgage or promissory note contains a provision for the borrower to pay the lender's costs of collection and enforcement, "[t]he claim for an attorney's fee is as much a part of the contract as any other feature of it." *Taylor*, 276 So.2d at 133; *see also Army Aviation Center Federal Credit Union v. Poston*, 460 So.2d 139, 141 (Ala. 1984) ("provisions regarding reasonable attorney's fees are terms of the contracts susceptible to breach"). It is well-settled that "[i]t is not a function of the courts to make new contracts for the parties, or raise doubts where none exist." *Title Max of Birmingham, Inc. v. Edwards*, 973 So.2d 1050, 1054 n.1 (Ala. 2007) (citations and internal quotation marks omitted).

Simply put, Mortensen agreed to pay BAC Servicing's reasonable attorney's fees in enforcing the Note and pursuing its remedies under the Mortgage. Alabama courts enforce such promises. *See generally Hunt v. NationsCredit Financial Services Corp.*, 902 So.2d 75, 83 (Ala.Civ.App. 2004) (affirming trial court's fee award against borrower where borrower had unsuccessfully sued lender alleging wrongful foreclosure of her property, and reasoning that such fees were authorized under the terms of the note). As such, BAC Servicing is entitled to hold Mortensen to these contractual obligations, and to be reimbursed for its reasonable attorney's fees and costs expended in this litigation.

### **III. Reasonableness of Fees and Expenses Requested.**

Of course, to declare that BAC Servicing is entitled to an award of attorney's fees and expenses is a different issue than whether the requested amounts are reasonable. After all, the relevant contractual documents do not specify that BAC Servicing is automatically entitled to all of its attorney's fees; rather, they provide that only "reasonable" fees may be recovered.[10] Under

---

[10] Such a "reasonableness" limitation would be engrafted onto these provisions by Alabama law even if it were not explicitly stated therein. *See Willow Lake Residential Ass'n, Inc. v. Juliano*, --- So.3d ----, 2010 WL 3377701, *11 (Ala.Civ.App. Aug. 27, 2010) ("Alabama law reads into every agreement allowing for the recovery of attorney's fees a reasonableness limitation.").

Alabama law, "[t]he determination of whether an attorney fee is reasonable is within the sound discretion of the trial court." *Ex parte Edwards*, 601 So.2d 82, 85 (Ala. 1992); *see also Subway Restaurants, Inc. v. Madison Square Associates, Ltd. by CBL Wyoming, Inc.*, 613 So.2d 1255, 1257 (Ala. 1993) ("The reasonableness of an attorney fee under a contract providing for the recovery of reasonable attorney fees is largely within the discretion of the trial court.").

BAC Servicing claims entitlement to attorney's fees of $112,821.20 and expenses of $9,651.61. In support of these amounts, movant has submitted the following: (i) a 15-page declaration by its lead counsel, Alan Warfield, documenting and explaining the various charges and fees; (ii) back-up documentation, consisting of more than 170 pages of itemized billing records, receipts for expenses, and payment records; and (iii) a 5-page declaration by attorney Patrick Sims addressing the reasonableness of the hours and rates. (*See* doc. 85, Exhs. 1 & 2.) In stark contrast to movant's comprehensive documentation supporting the fee request, Mortensen merely states in conclusory fashion that the claimed amounts are "exorbitant, highly inflated and unjustifiable" (doc. 92, at 3) and that "[t]here is no doubt that the Defendant's current request for … attorneys fees and costs is inflated and unreasonable" (doc. 93, ¶ 26). But he offers no specific criticisms or examples. He does not point to a single time entry or claimed expense, or a category of time entries or expenses, that he claims is "exorbitant" or "inflated." He makes no effort to rebut BAC Servicing's comprehensive explanation of why these fees and expenses were reasonably incurred in this case. Instead, Mortensen paints with exceedingly broad strokes, essentially asserting that the amount sought is so high as to be inherently unreasonable, even though plaintiff omits any detail or substance that might justify such a finding.

The Court agrees with Mortensen on one point: $112,821.20 is an unusually high number for attorney's fees incurred in a single-plaintiff residential mortgage loan dispute that concluded at the summary judgment stage, without a trial. Indeed, the undersigned would expect the median costs of defense for a lender in a lawsuit of this kind pending in this District Court through summary judgment to be substantially lower than the amount claimed by BAC Servicing here. But that doesn't necessarily mean that BAC Servicing's fee request is unreasonable. Closer examination confirms that, in the context of this case, the fees sought are, in large measure, appropriate and reasonable.

"The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Edwards*, 601 So.2d at 85 (citation omitted); *see also City of Birmingham v. Horn*, 810 So.2d 667, 682 (Ala. 2001) (first step in attorney-fee calculation using lodestar method is to "determine the number of hours reasonably expended by counsel and a reasonable hourly rate of compensation for counsel's representation"). "When an applicant for attorney fees has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee to which counsel is entitled." *Edwards*, 601 So.2d at 85 (citation and internal quotation marks omitted). BAC Servicing's attorneys were billing by the hour, so the petition seeks recovery of fees calculated as the actual number of hours billed multiplied by the actual hourly rates of the attorneys involved.[11]

The reasonableness of the hourly rates charged by BAC Servicing's counsel in this matter cannot plausibly be contested (and has not been called into question by Mortensen). Attorney Warfield, a partner at a large law firm's Birmingham office, bears some 13 years of litigation experience, during which time he has represented lenders and banks in more than 100 lawsuits concerning residential mortgage loans. (Warfield Decl., ¶¶ 4, 10.) Given Warfield's qualifications and experience, as well as prevailing rates in the relevant legal market, his hourly billing rate of $190 in this matter is eminently reasonable. The same goes for the associates whose time was billed to BAC Servicing at hourly rates of $125 to $131. In that regard, the Court agrees with Attorney Sims' assessment that "[t]he billing rates charged by defendants' lawyers are below local market rates." (Sims Decl., ¶ 13.)

With respect to the number of hours, BAC Servicing seeks reimbursement for 724.3 hours of attorney time actually expended. The heft of that hours figure certainly warrants

---

[11] To evaluate the reasonableness of an attorney's fee, Alabama courts consider the following criteria: "(1) [T]he nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances." *Madison County Dep't of Human Resources v. T.S.*, 53 So.3d 38, 44 (Ala. 2009) (citations omitted). These factors inform the Court's discussion of reasonableness *infra*.

skepticism and careful scrutiny.[12] But BAC Servicing chronicles various unusual circumstances that it contends can justify the steep accrued hours figure in this case. Specifically, movant points to plaintiff's persistent pattern of unreasonably multiplying, delaying, and obstructing these proceedings. (Warfield Decl., ¶ 14.) The explanation consumes approximately seven pages of the Warfield Declaration. In summary, BAC Servicing shows that it was necessary to devote an unusually large quantity of attorney time to this case for the following reasons: (i) Mortensen's confusing, vague pleadings purported to raise as many as 19 legal theories for recovery, each of which BAC Servicing had to investigate, explore during discovery, research and brief on summary judgment;[13] (ii) in investigating plaintiff's claims, defendant reviewed voluminous records concerning Mortensen's similar acts of defaulting, seeking loan modifications, and asserting similar legal claims against BAC Servicing and other entities as to numerous other loans, encompassing thousands of pages of documents spanning at least six active loan files and four lawsuits; (iii) BAC Servicing had to research and prepare responses to confusing (and ultimately meritless) dispositive motions filed by Mortensen in the form of both Rule 12(b) and Rule 56 motions; (iv) the parties engaged in protracted discovery disputes arising from Mortensen's refusal to provide substantive responses to discovery requests and his submission of numerous piecemeal and sometimes internally inconsistent supplemental

---

[12] BAC Servicing does not, and cannot, gloss over the magnitude of these hours, but instead confronts the issue head-on. Attorney Warfield concedes that "[t]he amount of fees and expenses incurred by BAC Servicing in this matter is greater than in many cases of this nature that I have handled in recent years." (Warfield Decl., ¶ 13.) And Attorney Sims admits that upon hearing that BAC Servicing sought recompense for approximately 750 hours of attorney time in this matter, "my thought was that the time seemed high for a case involving claims and counterclaims for a residential mortgage foreclosure and Truth in Lending Act and supplemental jurisdiction state law claims." (Sims Decl., ¶ 10.)

[13] This is so despite plaintiff's failure to make more than a half-hearted, cursory attempt on summary judgment to support the vast majority of these theories. Just because plaintiff made no serious attempt to develop or support numerous of his claims did not excuse BAC Servicing from presenting thorough, well-researched, and factually-supported summary judgment arguments as to each of them. *See, e.g., Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) ("even in an unopposed motion [for summary judgment], the moving party still bears the burden of identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact") (citation and internal quotation marks omitted).

discovery responses, culminating in multiple motions to compel; (v) plaintiff's uncooperativeness as to depositions required defense counsel to travel to Miami, Florida, on multiple occasions for depositions, and to expend resources locating and subpoenaing non-party witnesses whom Mortensen almost certainly could have found and/or produced as a matter of professional courtesy; (vi) settlement negotiations were ongoing for more than a year, but were invariably stymied by plaintiff's unrealistic valuation of the case and his refusal to provide information that BAC Servicing would need in order to formulate possible loan modifications; and the like. Plaintiff has not endeavored to rebut any of these circumstances, much less to explain why they did not reasonably cause BAC Services to devote an abnormally high amount of attorney time to litigating this matter.

The point is simple: In a garden variety residential loan modification/default case, the expenditure of 724.3 hours of defense attorney time to get the case through summary judgment would be unreasonable. This could and should have been such a garden variety case. But it wasn't, in large part because of choices that plaintiff made to maximize the litigation burden on the defense, to refuse to cooperate on discovery matters, to thwart settlement negotiations with unreasonable demands and withheld information, and to multiply the number of claims, causes of action, and motion practice far beyond the borders of reason. Having implemented a "slash and burn" litigation philosophy throughout this case, plaintiff cannot now be heard to balk that defense counsel was unreasonable for putting in the long hours needed to mount a comprehensive, successful defense against such tactics. This is particularly true where, as here, the only reasonableness objection posited by plaintiff is so vague and conclusory that it does not highlight any specific portion of the fees (either on the hours or the rates side of the equation) that plaintiff believes to be unreasonable.[14]

In light of the foregoing, it is the finding of this Court that, under the case-specific circumstances presented here, BAC Servicing has met its burden of establishing that the number of hours claimed in its petition for attorney's fees is reasonable. That said, there are two small

---

[14] In other words, it is incumbent on plaintiff to recite in specific terms <u>why</u> he believes the requested fee award is unreasonable and to rebut BAC Servicing's specific showing of reasonableness as to hours and rates. But Mortensen's objection is merely that he thinks he deserved to win the case and the requested amount is a big number. The former assertion is immaterial, and the latter observation, in and of itself, says little about reasonableness.

exceptions that the Court will delete from the final tally of compensable hours. First, BAC Servicing has not shown why it was reasonably necessary to bill for the time of legal assistant Taylor Blalock in the amount of 12.1 hours at $76/hour (as opposed to such services falling under the rubric of law firm overhead that attorney billable hourly rates are intended to capture); therefore, the sum of $919.60 will be deducted from the total fee award. Second, the Court finds that the attorney time expended in analyzing and addressing Mortensen's threat to sue Attorney Warfield individually, while proper and reasonable, does not bear a sufficiently close nexus to the types of fees for which recovery was authorized under the Note and Mortgage, but instead relates to a collateral matter. On that basis, the Court deducts 1.9 hours of Attorney Warfield's time (at $190/hour) and 0.7 hours of Attorney Wells' time (at $280/hour), for a total deduction of $557.00. After making these adjustments, the total attorney's fee award obtained from multiplying BAC Servicing's reasonable hours expended by the reasonable hourly rates charged is $111,344.60.[15]

That figure of $111,344.60, which is merely the product of multiplying reasonable hours by reasonable hourly rates, is known as the "lodestar." *See Horn*, 810 So.2d at 680; *Edwards*, 601 So.2d at 85 (when number of hours reasonably expended on the litigation is multiplied by a reasonable hourly rate, "[t]his amount is known as the 'lodestar' amount"). As noted, the lodestar is "presumed to be the reasonable fee to which counsel is entitled." *Edwards*, 601 So.2d at 85 (citation omitted). Having determined what the lodestar amount is, the Court's next task is to examine whether an adjustment is necessary, such as "a multiplier determined by considering a variety of factors, including the complexity of the case and counsel's experience," *Horn*, 810 So.2d at 670, or a reduction if, for example, "only a partial or limited result was obtained." *Edwards*, 601 So.2d at 86. No party has requested any such adjustment (up or down) of the lodestar amount in this case, and the Court's independent review reveals that none is warranted. Accordingly, it is the opinion of this Court that BAC Servicing is entitled to an award of attorney's fees in the amount of **$111,344.60**.[16]

---

[15] For clarity's sake, the arithmetic is as follows: BAC Servicing claimed a total of $112,821.20 in attorney's fees, from which the Court subtracted $919.60 for legal assistant time, as well as $557.00 of attorney time related to the "threat" issue, for a total of $111,344.60.

[16] In awarding such an amount, the Court is cognizant that the fee award nearly equals the principal and interest owed by Mortensen on the loan. But that fact is not troubling. (Continued)

BAC Servicing also seeks an award of $9,651.61 in expenses pursuant to the fee-shifting provisions of the Note and Mortgage. Those agreements plainly obligate Mortensen to pay not only BAC Servicing's reasonable attorney's fees, but also its other expenses. As such, this category of expenditure is plainly within the scope of the contractual provisions at issue. The particular items for which defendant seeks recovery include filing fees, photocopies, service fees, witness fees, deposition transcripts, other deposition-related expenses (airfare, lodging, ground transportation), and Fed Ex charges. (Warfield Decl., at Exh. B.) These expenses are fully documented and appear reasonable and proper on their face. Plaintiff has interposed specific objections to none of them. Accordingly, BAC Servicing will also be awarded its costs and expenses of litigation in the amount of **$9,651.61** pursuant to the relevant contractual provisions.

## IV. Conclusion.

For all of the foregoing reasons, BAC Servicing's Motion for Award of Attorney's Fees and Expenses (doc. 82) is **granted** pursuant to Rules 54(d) and 59(e), Fed.R.Civ.P. Pursuant to the contractual fee-shifting obligations set forth in the Note and Mortgage, an award of **$111,344.60** in reasonable attorney's fees and **$9,651.61** in costs and expenses is properly included in the judgment previously entered in this matter. An amended judgment will be entered contemporaneously herewith pursuant to Rule 59(e).

DONE and ORDERED this 3rd day of May, 2011.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

By itself, the magnitude of the fees requested relative to the amount of the underlying indebtedness does not forbid their award. *See Taylor*, 276 So.2d at 134 ("Even though the fee greatly exceeds the amount of principal and interest on the original obligations, the fee is not so excessive as to pronounce error in the allowance accepted by the trial court.").